Rachel Brill
Federal Public Defender

Franco L. Pérez-Redondo
Assistant Federal Public Defender
Supervisor, Appellate Division
USDC-PR No. G02414
Franco_Perez@fd.org

Jessica E. Earl
Assistant Federal Public Defender
USDC-PR No. 302613
Jessica_Earl@fd.org

241 F.D. Roosevelt Ave.
San Juan, PR 00918
(787) 281-4922

Counsel for Petitioner

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| Juan M. Crespo-Morales,<br><br>Petitioner,<br><br>v.<br><br>Nicanor Caro-Delgado, et al.,<br><br>Respondents. | Case No. 16-cv-1755-PAD<br><br>**Petitioner's Objections to Respondents' Translation of the Trial Testimony of Regino Burgos-Torres** |

## I. Introduction

Petitioner Juan M. Crespo-Morales objects to the translation Respondents filed on September 11, 2026, ECF No. 135, and respectfully asks the Court to decline Respondents' request to deem the June 15 Order, ECF No. 133, satisfied. The filing does not comply with the Order for at least five reasons.

*First*, the Order noted the Spanish-language transcript Respondents had filed at ECF No. 131 and required "certified translations of the transcript." ECF No. 133. Respondents translated something else: a "digital copy" obtained after the Order issued, which Respondents have not filed in Spanish. ECF No. 135 ¶ 4; *see* ECF Nos. 135-2 at 6, 135-25 at 10, 135-27 at 9 (certifications dated June 2026). Because that later-obtained digital copy remains unfiled, neither the Court nor Mr. Crespo can compare the English against the text Respondents' translator used.

*Second*, the Order directed Respondents to "identify those illegible portions and furnish a narrative summary of them under Rule 5(c) of the Rules Governing Section 2254 Cases or, if any portion cannot be summarized, explain why that is the case." ECF No. 133. Respondents' filing did not identify a single illegible portion of ECF No. 131. Respondents also passed over two omissions in the testimony of Mr. Regino Burgos-Torres. An entire numbered page is absent from both the filed Spanish transcript and the translation, and the court reporter expressly notes that testimony is missing during cross-examination about Burgos-Torres's sworn statement. ECF No. 131-2 at 86-87, 153, l. 9; ECF Nos. 135-11 at 6-7, 135-18 at 4, l. 9. Respondents have provided neither the missing testimony nor an account of whether it can be recovered.

*Third*, the translation distorts testimony central to the prosecution's motive theory: Burgos-Torres's account of a meeting in Cidra at which the group allegedly discussed the killing of Mr. Crespo's brothers. *See Crespo-Morales v. Caro-Delgado*, 177 F.4th 54, 57 (1st Cir. 2026); ECF No. 131-2 at 2-9. Respondents' translation recasts the trial judge's question about whether Burgos-Torres meant one brother or several, and it turns the witness's identification of the meeting's organizer into a prosecutor's question. *See* ECF No. 131-2 at 3, ll. 1-8; ECF No. 135-3 at 3, ll. 4-6; ECF No. 131-2 at 9, ll. 9-13; ECF No. 135-3 at 9, ll. 9-12. And Respondents' translation twice attributes defense counsel's objections to attorneys whose names appear nowhere in the Spanish version filed at ECF No. 131, which suggests that the translation was not carefully checked against the Spanish source. ECF No. 131-2 at 4, 6; ECF No. 135-3 at 4, 6.

*Fourth*, the translated Tapes 11 to 15 volume, the nearly 200 pages containing the Cidra meeting, the killings, and much of the cross-examination, ends without the Commonwealth copy certification appended to other translated volumes. ECF Nos. 135-3 to 135-22; *see* ECF No. 135-22 at 7; *compare* ECF Nos. 135-2 at 6, 135-25 at 10, 135-27 at 9. The certification on the different, previously filed copy at ECF No. 131 does not establish the provenance or completeness of the unfiled Spanish volume used for this translation.

*Fifth*, the translation omits the cover page identifying where Burgos-Torres's testimony begins, leaves four pages of the final volume unaccounted for, and misnumbers and duplicates pages. *See* ECF No. 131-1 at 1; ECF No. 135-1 at 1; ECF No. 135-26 at 1; ECF No. 135-14 at 11; ECF No. 135-15 at 1. For example, the translation numbers page 177 as "157," a page that falls within another witness's testimony. ECF No. 131-1 at 1, 9; ECF No. 135-1

at 8. These errors prevent reliable citation to, and checking of, the testimony the Court must consider to evaluate the *Brady* claim.

The First Circuit held that the full context of Burgos-Torres's testimony is necessary to assess the *Brady* claim. *Crespo-Morales*, 177 F.4th at 59-60. Mr. Crespo therefore respectfully asks the Court to order Respondents to submit the Spanish copy used for translation, an account of the missing and illegible testimony, and a corrected translation before setting a supplemental briefing schedule. This case is ten years old and has twice returned from the Court of Appeals because the record Respondents supplied was inadequate. *See id.* at 58-60. Given that history, Mr. Crespo respectfully suggests that the Court may wish to set a final deadline for Respondents' record-lodging obligations and to consider what consequences may be appropriate should Respondents once again fail to produce the required record.

## II. Background

In the ordinary 28 U.S.C. § 2254 case, the district court can expect the trial transcript to arrive with the respondents' answer. *See* Rule 5(c), Rules Governing Section 2254 Cases in the United States District Courts. In this case, a decade, two appeals, and three months after this Court's express instructions on remand, Respondents still have not furnished Burgos-Torres's testimony in usable form. In brief, in October 2020, the Puerto Rico Judiciary certified a copy of the transcript of Burgos-Torres's trial testimony at the request of Respondents' counsel. ECF No. 131-2 at 198. Respondents nonetheless reported for months afterward that the testimony remained unobtained. ECF Nos. 91 ¶ 2, 93 ¶ 2, 101 ¶ 2, 103 ¶ 2. On appeal, Respondents insisted that the trial transcript was unobtainable, a premise the First Circuit rejected. *Crespo-Morales*, 177 F.4th at 60. On remand, Respondents apparently filed the copy that was certified to their counsel in 2020. *See* ECF No. 131-2 at 198. But Respondents'

translation is not based on ECF No. 131; it is based on a different Spanish-language copy, which Respondents have not filed. *See* ECF No. 135 ¶ 4. The history that follows explains why the Court needs the source copy, and an account of the missing testimony, before it can conduct the review that the First Circuit ordered.

* * *

Mr. Crespo filed this § 2254 petition *pro se* in April 2016. ECF No. 3. Over the next two and a half years, Respondents, represented from the outset by Attorney Joel Torres-Ortiz, moved to dismiss twice, answered, and moved for summary judgment. ECF Nos. 7, 9, 39, 50, 52. Respondents did all of it without producing the record of Mr. Crespo's trial or of his post-conviction hearing under Puerto Rico Rule of Criminal Procedure 192.1. This Court granted summary judgment for Respondents in 2019. ECF No. 65; *Crespo-Morales*, 177 F.4th at 57. On the first appeal, the First Circuit vacated because the record did "not reflect compliance with Rule 5(c) of the Rules Governing § 2254 Cases." *Crespo-Morales*, 177 F.4th at 58 (describing the 2020 remand in 1st Cir. No. 19-1757); ECF No. 74. On remand in 2020, this Court directed Respondents to produce the transcript of Regino Burgos-Torres's trial testimony or a narrative summary of it, stressing that "there is no way around this because the First Circuit was clear that as of now, the record is incomplete." ECF No. 82 at 2-3.

On October 8, 2020, Respondents' counsel examined the trial file at the Central Archives of the Commonwealth Office of Court Administration and "was able to locate Mr. Regino Burgos-Torres's trial testimony in its entirety." ECF No. 89 ¶ 5. According to the copy of the transcript later filed at ECF No. 131, on October 16, 2020, the Puerto Rico Judiciary's Document Administration Program certified a copy of all three volumes of that testimony, issued at the request of "Joel Torres Ortiz (Dpto de Justicia)," Application No. 5443. ECF No. 131-1 at 17; ECF No. 131-2 at 198; ECF No. 131-3 at 44. Five days later, Attorney Torres-

Ortiz filed Respondents' third status report. ECF No. 89. The report told this Court that the trial file was flood-damaged, that "special handling is needed in order to examine the documents," and that Respondents needed 30 more days. ECF No. 89 ¶¶ 9-10. Respondents' report did not mention the certified copy. Each of the next four reports, the last filed in March 2021, recited that Respondents had obtained the relevant documents "except for" the Rule 192.1 hearing testimony "and … Mr. Regino Burgos-Torres's trial testimony." ECF No. 91 ¶ 2; ECF No. 93 ¶ 2; ECF No. 101 ¶ 2; ECF No. 103 ¶ 2; *see Crespo-Morales*, 177 F.4th at 58 (reports "continued to indicate that [the Commonwealth] was in the process of obtaining a readable transcript"). In February 2023, Respondents were ordered to refile "all certified translations submitted in this case as exhibits to a single motion." ECF No. 113. Respondents' submission did not include the Burgos-Torres testimony, ECF No. 115, which by then had apparently been certified to their counsel for more than two years, *see* ECF No. 131-1 at 17; ECF No. 131-2 at 198; ECF No. 131-3 at 44. In June 2023, the Court denied the § 2254 petition without the transcript. ECF No. 116.

On the second appeal, Respondents told the First Circuit that "[t]he original trial transcript was not produced because it was not available due to damage caused during Hurricane María," Appellee's Br. 17, *Crespo-Morales v. Caro-Delgado*, No. 23-1638 (1st Cir. Sept. 25, 2025), and that Respondents therefore "were not able to produce the trial transcript," *id.* at 22. The record, Mr. Crespo rejoined, belied those representations. *See* Appellant's Reply Br. 8-15, No. 23-1638 (1st Cir. Nov. 13, 2025). The First Circuit ultimately agreed with Mr. Crespo. Writing for the court, Justice Breyer "reject[ed] the Commonwealth's suggestion that a transcript of Burgos-Torres's testimony is unavailable due to Hurricane Maria." *Crespo-Morales*, 177 F.4th at 60. (Another court in this District has likewise described as "suspect" similar claims by the Puerto Rico Department of Justice ("PRDOJ") that trial transcripts

were "lost to posterity." *Ramos-Cruz v. Emanuelli-Hernández*, 677 F. Supp. 3d 47, 54 (D.P.R. 2023)).

On remand, the Court ordered Respondents, *inter alia*, to "file a copy of the transcript of Regino Burgos-Torres' trial testimony." ECF No. 130. Respondents then filed a Spanish-language transcript. ECF No. 131. The submitted transcript appears to be the copy originally certified to Respondents' counsel on October 16, 2020.[1] *See* ECF No. 131-1 at 17; ECF No. 131-2 at 198; ECF No. 131-3 at 44. By Respondents' account, "most of it is legible." ECF No. 131 ¶ 2.

The Court noted ECF No. 131 and ordered Respondents, "in addition to the certified translations of the transcript," to "identify those illegible portions" and to "furnish a narrative summary of them under Rule 5(c) of the Rules Governing Section 2254 Cases or, if any portion cannot be summarized, explain why that is the case." ECF No. 133. Respondents had three months to do so.

## III. Discussion

### A. Respondents translated a Spanish text that is not in the record, and they did not address the illegible portions of the one that is.

When the Court issued the Order at ECF No. 133, the only Spanish transcript of the Regino Burgos-Torres trial testimony in the record was the one Respondents had filed at ECF No. 131. The Order noted Respondents' filing at ECF No. 131, observed that Respondents

[1] Each certification bears the same date, the same application number, and the same requester, "Joel Torres Ortiz (Dpto de Justicia)." ECF No. 131-1 at 17; ECF No. 131-2 at 198; ECF No. 131-3 at 44. Attorney Torres-Ortiz was Respondents' counsel of record and signed all seven status reports filed following the first remand. ECF Nos. 83, 87, 89, 91, 93, 101, 103. According to the Puerto Rico Judiciary certifications, the copies were issued in counsel's name in October 2020.

had described it as having "illegible parts," and required, "in addition to the certified translations of the transcript," that Respondents "identify those illegible portions and furnish a narrative summary of them under Rule 5(c)," or explain why they could not. ECF No. 133.

Respondents did neither. Instead of translating ECF No. 131, Respondents obtained a second copy of the testimony, a "digital copy … obtained from the Court of First Instance," and translated said copy. ECF No. 135 ¶ 4. The Commonwealth certifications translated with it are dated June 17, 2026 (Application No. 6,832, covering the Tapes 6 to 10 and Tape 16 volumes) and June 26, 2026 (Application No. 7,836, covering the Tape 17 volume), meaning the documents Respondents translated postdate ECF No. 133's issuance. ECF No. 135-2 at 6; ECF No. 135-25 at 10; ECF No. 135-27 at 9. Respondents did not tell the Court they were substituting a different copy, and they have not filed it. Having translated around ECF No. 131's illegible portions, Respondents also did not identify them. Respondents acknowledge that "[p]ortions of said transcript were illegible," ECF No. 135 ¶ 2, but they have not identified one or furnished a narrative summary of any.

The substitution leaves the Court and Mr. Crespo with an English text that has no Spanish counterpart in the record. The translator's certification does not identify its source by title, date, or certification number; it attests only that the work is "a true and accurate translation, to the best of my abilities, of the *document in Spanish which I have seen*." *E.g.*, ECF No. 135-1 at 1 (emphasis added). Again, not a single page of the document the translator saw has been filed. Neither the Court nor Mr. Crespo can check the translation against its source, in a court whose proceedings must be conducted in English. 48 U.S.C. § 864. And, because the translation is inaccurate where it can be checked, *see* Section III.D, *infra*, its accuracy where it cannot be checked should not be presumed.

Nor have Respondents explained where the digital copy came from or how it relates to ECF No. 131. Respondents' motion places both copies in the same file: the paper copy is illegible "because the Court First Instance's file was damaged after Hurricane Maria," ECF No. 135 ¶ 2, and the digital copy was "obtained from the Court of First Instance," *id.* ¶ 4. Yet the certifications on the digital copy apparently come not from the Court of First Instance but from the Judicial Branch's Document Administration Program, through its Central Records Office in Hato Rey, ECF No. 135-25 at 10; ECF No. 135-27 at 9, the same program that certified the paper copy in 2020, ECF No. 131-1 at 17. Both certifications attest to a true and exact copy of the original on file. *Compare* ECF No. 135-2 at 6, *with* ECF No. 131-1 at 17. Respondents told this Court in 2020 that the original had been "damage[d] by flooding caused by Hurricane Maria." ECF No. 89 ¶ 9. The motion does not explain how a copy of that original certified in 2026 came to be legible where the copy certified in 2020 is not: whether the digital copy is a scan made before Hurricane María, an electronic file, or a copy of some other original; when it was created; or by whom.

The provenance question matters because the two copies are not identical. For instance, the digital copy that Respondents translated includes a page ECF No. 131 lacks. Page 14 of the Tape 17 volume, on which the trial court excuses Burgos-Torres as a witness, appears in the translation, ECF No. 135-27 at 8, but the Tape 17 volume of ECF No. 131 ends at page 13, ECF No. 131-3 at 43. And, where ECF No. 131 is illegible, most heavily in the Tape 17 volume, where speaker designations and the beginnings and ends of lines are obscured on most pages, ECF No. 131-3 at 30-43, the translation presents complete text that can be traced only to the unfiled copy. Two examples illustrate the point.

*Tapes 11 to 15, page 1.* Burgos-Torres's first answer about the Cidra meeting reads in ECF No. 131 "[s]e discutió, pues lo que había pasado con su herma—," with the rest of the line illegible. ECF No. 131-2 at 2, l. 24. The translation renders it "their brother." ECF No. 135-3 at 2, l. 24. The illegible ending is the one defense counsel and the trial court stopped to clarify, asking whether the witness had said "hermana" and whether he meant one brother or more. ECF No. 131-2 at 3, ll. 1-8. The translation mistranslates that exchange as well. *See infra* Section III.D.

*Tape 17, page 13.* Defense counsel asked Burgos-Torres what other information about Mr. Crespo his relatives had brought him. In ECF No. 131, the opening of that question, the prosecutor's objection to it, and the court's response are obscured. ECF No. 131-3 at 43. The translation purports to render all three in full. ECF No. 135-27 at 7, ll. 18-24. These renderings may be accurate, but no one can check them against the text Respondents translated.

Respondents should therefore be directed to file the Spanish text they translated, with its Commonwealth certifications, and to state for each volume when, from which office, and in what form they obtained it. Until they do, ECF No. 131 remains the only Spanish transcript in the record, and neither half of the Order at ECF No. 133 can be carried out: Respondents have not addressed the illegible portions of the transcript that is in the record, and Mr. Crespo cannot test the accuracy of a translation whose source remains withheld.

### B. Respondents translated the Tapes 11 to 15 volume, which contains the Cidra meeting testimony and nearly 200 of the roughly 250 pages of Burgos-Torres's testimony, from a Spanish text that bears no Commonwealth certification.

The Commonwealth certifications are the only evidence in the record that a given copy reproduces the transcript in the Commonwealth court's file. Each is issued by the Judicial

Branch's Document Administration Program and attests that the document is a "true and exact copy of the original document existing on file." *E.g.*, ECF No. 135-2 at 6; *see* ECF No. 131-1 at 17 ("copia fiel y exacta del original que obra en autos"). The certification by Respondents' translator attests to something else. As mentioned, it states only that the English is "a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen." *E.g.*, ECF No. 135-1 at 1. The translator does not identify that document or say where it came from. *See supra* Section III.A. At most, the translator's certification establishes that the English matches whatever Spanish text the translator was given. It says nothing about whether that Spanish matches the transcript in the Commonwealth court's file.

Three of the four translated volumes close with a Commonwealth certification. The Tapes 6 to 10 and Tape 16 volumes bear certifications issued on June 17, 2026, under Application No. 6,832. ECF No. 135-2 at 6; ECF No. 135-25 at 10. The Tape 17 volume bears one issued on June 26, 2026, under Application No. 7,836. ECF No. 135-27 at 9. The Tapes 11 to 15 volume has none. The translation of that volume ends at page 196 without a certification of any kind, ECF No. 135-22 at 7, and no certification issued under either application appears anywhere in its twenty attachments, ECF Nos. 135-3 to 135-22. Nothing in Respondents' filing shows when, where, or from whom they obtained the Spanish text from which that volume was translated.

The missing certification, moreover, falls on the volume that matters most. Tapes 11 to 15 accounts for nearly 200 of the roughly 250 pages of Burgos-Torres's testimony. It contains Burgos-Torres's account of the Cidra meeting, on which the Commonwealth court's decision rests, ECF No. 135-3 at 2-9; his account of the planning and execution of the killings; the terms and origins of his cooperation agreement, ECF No. 135-11 at 5-7; and much of

defense counsel's cross-examination. It is also the volume from which testimony is missing. *See infra* Section III.C.

Nor can Respondents rely on the certification on ECF No. 131 to authenticate the Spanish text they translated. The paper copy of Tapes 11 to 15 that Respondents filed in June bears a Commonwealth certification issued in October 2020. ECF No. 131-2 at 198. But that certification vouches for the paper copy, not for the unfiled digital copy Respondents translated. For the most important volume of the testimony, then, Respondents have filed a certified Spanish text they did not translate and translated a Spanish text that is neither filed nor certified.

### C. Testimony is missing from pages 86 and 153 of the Tapes 11 to 15 volume, and Respondents have neither identified the missing testimony nor said whether that testimony can be recovered, as required by Rule 5(c) and ECF No. 133.

Rule 5(c) requires a respondent to "indicate what transcripts … are available" and provides that, "[i]f a transcript cannot be obtained, the respondent may submit a narrative summary of the evidence." The Order at ECF No. 133 applied that requirement to Burgos-Torres's testimony. The Court directed Respondents to identify any portion they could not produce in legible form and either to furnish a narrative summary of that portion or to explain why they could not. ECF No. 133. If the Order's directive reaches testimony that is hard to read, then, it also reaches testimony that is not there at all. Two such portions of the Tapes 11 to 15 volume are missing from both the paper copy at ECF No. 131 and the digital copy Respondents translated. The first is an entire page, page 86. The second is the testimony the court reporter recorded as missing on page 153. Respondents' filing mentions neither. *See* ECF No. 135.

Page 86 is missing from both the copy of the transcript filed at ECF No. 131 and from Respondents' translation. In both copies, the Tapes 11 to 15 volume is paginated consecutively from 1 to 196, and every other page appears present. In ECF No. 131, page 85 is followed directly by page 87. ECF No. 131-2 at 86-87. The translation that Respondents submitted skips the same page. *See* ECF No. 135-11 at 6-7.

Though page 86 is missing, the pages surrounding it indicate what it covered. Near the bottom of page 84, the prosecutor asks Burgos-Torres to tell the jury about the agreement he struck with the Puerto Rico Department of Justice to testify against Mr. Crespo. ECF No. 135-11 at 5, ll. 19-25. On page 85, Burgos-Torres says he will plead guilty and serve thirty years, and a probationary sentence he was serving will be revoked. ECF No. 135-11 at 6, ll. 1-10; *see* ECF No. 135-11 at 5, ll. 15-18. Burgos-Torres then testifies that the agreement also resolves a murder case in San Juan, the killing of Hiram Cantre. Burgos-Torres identifies Cantre as one of seven people he killed while working for Cristóbal Ramos Sánchez. ECF No. 135-11 at 6, ll. 11-23. Page 85 ends with the prosecutor's question: "Can you tell the ladies and gentlemen of the jury why that death took place, Hiram Cantre's death?" ECF No. 135-11 at 6, ll. 24-25.

Page 87 opens on a different subject. Its first line is an answer (A: "María del Mar Dávila") to a question that does not appear on page 85. *See* ECF No. 135-11 at 7, l. 1. The prosecutor then asks for whom María del Mar Dávila's partner works, and Burgos-Torres answers, "For the same Court, for Legal Aid." ECF No. 135-11 at 7, ll. 2-3. Burgos-Torres testifies that, when he spoke with María del Mar Dávila, "she told me she was going to talk to someone to see," that "later, during that process, she told me that they could come to something," and that "that's when … I started speaking with the authorities about what happened

and how it happened." ECF No. 135-11 at 7, ll. 4-7. The prosecutor then establishes that the remaining terms of the agreement were put in writing, that Burgos-Torres read and signed them, and that the written agreement was marked as "People's Identification 4." ECF No. 135-11 at 7, ll. 8-25. The exchanges on either side suggest that page 86 contained Burgos-Torres's answer to why Hiram Cantre was killed and the beginning of his account of how his cooperation came about.

The second portion of missing testimony comes later, during cross-examination, and the transcript itself reflects the omission. Defense counsel asked Burgos-Torres: "antes de usted sentarse a declarar ayer, ¿cuándo fue la última vez que usted cogió su declaración jurada …?" ECF No. 131-2 at 153, ll. 7-8. The next entry is not an answer; it is a notation by the reporter: "(CONTINUA EL LADO 15—FALTA ALGO DE TESTIMONIO)"; that is, the recording continues on side 15—some testimony is missing. ECF No. 131-2 at 153, l. 9; *see* ECF No. 135-18 at 4, l. 9. The line after the notation begins a new question on a different subject. *See* ECF No. 131-2 at 153, ll. 10-11. The missing testimony falls in defense counsel's cross-examination about Burgos-Torres's sworn statement, the prior account against which counsel was testing Burgos-Torres's trial testimony. *See* ECF No. 135-18 at 3, ll. 12-15.

Both portions of missing testimony bear on the credibility of the prosecution's motive witness. Page 86 concerns the origins of Burgos-Torres's cooperation agreement. The testimony missing at page 153 concerns his prior sworn statement. The materiality of the eyewitness affidavits the prosecution suppressed depends on how the affidavits would have fit with the testimony the jury actually heard, which "may depend upon just what Burgos-Torres said at trial." *Crespo-Morales*, 177 F.4th at 59; *see Kyles v. Whitley*, 514 U.S. 419, 436 (1995) (materiality turns on "suppressed evidence considered collectively, not item by item"). Where the

transcript is missing testimony on those subjects, it does not supply "[t]he full context of Burgos-Torres's testimony" that the First Circuit required. *Crespo-Morales*, 177 F.4th at 60.

The testimony also appears to be missing from the Commonwealth's own record. The October 2020 copy, certified as a true and exact copy, lacks page 86 and carries the page 153 reporter notation. ECF No. 131-2 at 86-87, 153, 198. So does the digital copy Respondents obtained in June 2026 and translated. ECF No. 135-11 at 6-7; ECF No. 135-18 at 4. Respondents therefore had both portions of missing testimony in front of them when they filed ECF No. 135, and their filing at ECF No. 135 identified neither, as required by the Order at ECF No. 133.

Worse, Respondents have not said whether the missing testimony can be recovered. The transcript was prepared by a reporter from recorded tapes. The Tapes 11 to 15 cover identifies the tapes transcribed, ECF No. 135-3 at 1, and the notation at page 153 identifies the tape side on which the testimony resumes, ECF No. 131-2 at 153, l. 9. Rule 5(c) authorizes the Court to order "that parts of untranscribed recordings be transcribed and furnished." Respondents have obtained recordings of proceedings in this case from the Court of First Instance of Carolina before. ECF No. 103 ¶ 5 (recordings of the 2015 Rule 192.1 hearing). And the Tapes 11 to 15 volume was filed with the Puerto Rico Court of Appeals in June 1998, ECF No. 135-3 at 1, whose file may hold a complete copy. Respondents should be directed to state whether page 86, or the recordings of the testimony missing at pages 86 and 153, exist in the Court of First Instance file, the Court of Appeals file, or any other Puerto Rico Judiciary or Commonwealth record. If the missing testimony cannot be located, Respondents should be directed to furnish a narrative summary of that testimony or explain why they cannot. *See* ECF No. 133.

### D. The translation misrenders Burgos-Torres's account of the Cidra meeting, the testimony on which the Commonwealth court's decision rests.

The Commonwealth court denied Mr. Crespo's *Brady* claim on the premise that Burgos-Torres's testimony established Mr. Crespo's belief that V1, V2, and V3 (as Justice Breyer's opinion refers to them) had killed Mr. Crespo's brothers. On that premise, the Commonwealth court ruled, the eyewitness affidavits that the prosecution withheld did not matter, even though the affidavits placed two other men at the scene of the brothers' killing and none of V1, V2, or V3. *Crespo-Morales*, 177 F.4th at 56-57, 59. Burgos-Torres gave the testimony underlying the Commonwealth court's premise in describing a meeting at Lucio's restaurant in Cidra where, he testified, the group began planning how to find the men the group blamed for the brothers' killing. ECF No. 131-2 at 2-9; ECF No. 135-3 at 2-9. Whether the Commonwealth court reasonably applied *Brady*'s materiality standard depends in part on what Burgos-Torres said about Mr. Crespo's brothers and who organized the meeting. As argued below, Respondents' translation misrenders the testimony on both points. Except where bracketed, the Spanish in ECF No. 131 is legible at every point quoted below.

First, Respondents' translation misrenders what Burgos-Torres said about Mr. Crespo's brothers. Burgos-Torres testified that the meeting discussed "lo que había pasado con su herma[no]." ECF No. 131-2 at 2, ll. 22-24. Defense counsel asked whether he had said "hermana." He answered "[s]u hermano." The trial court then asked: "¿Se refiere en plural o en singular? ¿Sus o su?" He answered: "Sus." ECF No. 131-2 at 3, ll. 1-8. In Spanish, *su* and *sus* agree in number with the noun that follows, regardless of whether the possessor is singular or plural. The trial court was therefore asking whether Burgos-Torres meant one brother (*su hermano*) or more than one (*sus hermanos*), and Burgos-Torres answered the

plural. Respondents' translation instead renders the exchange as "Alright. Their as in plural?" and "Their as in plural." ECF No. 135-3 at 3, ll. 4-6. The translation treats the *s* in *sus* as marking more than one possessor, which the Spanish *s* cannot do, and drops "o en singular," the choice the trial court offered Burgos-Torres. As translated, the exchange no longer shows what the trial court asked of the witness or what Burgos-Torres answered, on a point the court stopped the examination to clarify.

Second, the translation garbles Burgos-Torres's testimony that someone other than Mr. Crespo organized the Cidra meeting. After Burgos-Torres agreed that Ronald planned the meeting, the Spanish reads: prosecutor, "Usted le dijo al jurado"; witness, "Ronald Coto"; prosecutor, "Señor, descríbale a las damas y caballeros del jurado cómo es la casa del [acusado]." ECF No. 131-2 at 9, ll. 9-13. The translation omits the prosecutor's line, labels the witness's answer "Q," and labels the prosecutor's next question "A." *See* ECF No. 135-3 at 9, ll. 9-12. As translated, the prosecutor, not Burgos-Torres, names the organizer.

Errors throughout the translation also call into question the translator's certification that the English is accurate.[2] Twice during Burgos-Torres's direct examination, for instance, the Spanish attributes a statement to defense counsel, "Lcdo. Farinacci": first, his demand that the witness "[d]iga quién habló," and later his "[a]delante." ECF No. 131-2 at 4, ll. 10-11; ECF No. 131-2 at 6, ll. 5-6. The translation attributes those statements to "Mr. Gordon-Menéndez" and "Ms. Cordero-Vázquez." ECF No. 135-3 at 4, l. 10; ECF No. 135-3 at 6, l. 5. No attorney by either name appears in the Spanish. Similarly, in the Tapes 6 to 10 volume, the prosecutor's representation that the defense had been shown photographs of Mr. Crespo's

[2] Capitalization of speaker designations is omitted in the quotations that follow.

brothers is attributed in the Spanish to the prosecutor, “Hon. Fiscal,” ECF No. 131-1 at 9, l. 28, and in the translation to “The Court,” ECF No. 135-1 at 8, l. 28. The translation also renders Burgos-Torres’s work installing “cable de fibra óptica de la Telefónica,” Puerto Rico’s telephone company at the time, as work “with Phone fiber optics.” ECF No. 131-1 at 3, l. 1; ECF No. 135-1 at 2, l. 1. And the translation contains many errors any proofreading would have caught, including “whether she was shit [sic] by any,” ECF No. 135-8 at 9, l. 22, and “commenting on what you aw [sic],” ECF No. 135-10 at 2, l. 11. Errors of that kind, which are not confined to these examples, are difficult to reconcile with a certification of accuracy on every page.

Part of the question before the Court is whether the Commonwealth court unreasonably applied *Brady* in concluding that the withheld affidavits were not material. *See Kyles*, 514 U.S. at 434. Answering that question requires weighing the affidavits against what Burgos-Torres actually said. *See Crespo-Morales*, 177 F.4th at 59. The Court cannot do that weighing on a translation that misrenders Burgos-Torres’s account of the Cidra meeting.

Mr. Crespo’s review of the translation against ECF No. 131 is necessarily provisional, because the Spanish text Respondents translated is not in the record and ECF No. 131 is illegible in places. Mr. Crespo therefore reserves further objections to accuracy until Respondents file the Spanish text they translated.

**E. The translation omits the Tapes 6 to 10 cover page, leaves part of the Tape 17 volume unaccounted for, and misnumbers and duplicates pages.**

Burgos-Torres’s testimony spans four separately paginated volumes, which Respondents filed as twenty-seven attachments described on the docket only as “Appendix Part” and

a number. *See* ECF No. 135. The cover page of each volume is the only guide to where the testimony begins and ends.

Respondents' translation is incomplete at both ends. The translation omits the Tapes 6 to 10 cover page, which shows that Burgos-Torres's testimony begins at page 170, after the testimony of three other witnesses. *Compare* ECF No. 131-1 at 1, *with* ECF No. 135-1 at 1. And the Tape 17 cover states that the next witness's testimony begins at page 19, ECF No. 135-26 at 1, but the translation of that volume ends at page 14, ECF No. 135-27 at 8, and ECF No. 131 ends at page 13, ECF No. 131-3 at 43. Pages 15 through 18 appear in neither copy. Respondents should file those pages or attest, after investigation, that they contain no testimony by Burgos-Torres.

The translation also misnumbers page 177 of the Tapes 6 to 10 volume as "157," a page that falls within another witness's testimony. ECF No. 135-1 at 8; ECF No. 131-1 at 1, 9. It contains two pages numbered 120 in the Tapes 11 to 15 volume, one of them blank. ECF No. 135-14 at 11; ECF No. 135-15 at 1. A corrected translation should include each volume's cover page and number every page as the Spanish does.

**F. The Court may wish to set a date certain and to consider measures to secure compliance.**

Nearly six years after Respondents' counsel located Burgos-Torres's testimony "in its entirety," ECF No. 89 ¶ 5, and after two appeals, three production orders, and repeated extensions, ECF Nos. 82, 84, 88, 90, 92, 96, 102, 104, 130, 133, the record still lacks a complete, verifiable English version of this one witness's testimony. Mr. Crespo has spent the decade this petition has been pending in prison. Respondents' latest filing also shifted to Petitioner's counsel work that Rule 5(c) assigns to Respondents. ECF No. 133 gave Mr. Crespo fourteen

days to test the translation's accuracy. Respondents filed on the last day that Order allowed and withheld the Spanish text they had translated, leaving Petitioner's counsel to compare some 250 pages of English against a different, incomplete, partly illegible copy. ECF No. 131 ¶ 2; ECF No. 133; ECF No. 135.

Delay in producing the state-court record is not unique to this case, and other judges of this District have rejected the justifications offered for it. When the PRDOJ invoked the "gargantuan costs imposed upon the Commonwealth" of translating the criminal record in a § 2254 case, Judge Gelpí found the argument "unavailing both as a matter of federal law and common sense," because "[t]he cost of translation cannot compare … to the fundamental liberty interest — freedom from unlawful restraint — protected by the writ of habeas corpus and the Constitution." *Atiles-Gabriel v. Commonwealth*, 256 F. Supp. 3d 122, 127-28 (D.P.R. 2017). When the PRDOJ argued in *Ramos-Cruz* argued that it could not locate a clean copy of the trial transcripts, Judge Besosa ruled that "[b]ureaucratic complications and dilatory clerks of court are a *non-sequitur*," because "[t]he respondents are in possession of the trial transcripts." *Ramos-Cruz v. Emanuelli-Hernández*, 677 F. Supp. 3d 47, 53 (D.P.R. 2023) (granting motion to strike the amended answer and ordering the PRDOJ to file the trial transcripts). The same is true here. Respondents told the First Circuit that the Burgos-Torres transcript "was not available due to damage caused during Hurricane María," Appellee's Br. 17, an assertion Respondents left uncorrected and one the First Circuit rejected, *Crespo-Morales*, 177 F.4th at 60. Yet, as noted, the Commonwealth's certification suggests that a certified copy of Burgos-Torres's testimony was issued to Respondents' counsel in October 2020. *See* ECF No. 131-2 at 198.

The translations the *Ramos-Cruz* respondents eventually filed had the same defects as Respondents' translation here, even after the court had taken the extraordinary step of releasing the petitioner. The court had observed that the respondents "cannot predict when the translations will be filed" and had "been lax to provide the transcripts they must by law provide." Order, *Ramos-Cruz*, No. 20-cv-1589 (D.P.R. Aug. 2, 2023), ECF No. 127 at 1. Even so, when the respondents submitted translations of the post-conviction hearing transcripts, some lacked certifications and others left blanks where testimony should have been, and the petitioner had to identify the discrepancies line by line. *See* Notice of Discrepancies, *Ramos-Cruz*, No. 20-cv-1589 (D.P.R. Oct. 19, 2023), ECF No. 178. The court granted the petitioner's motion "to address inaccurate transcript submissions" and ordered the respondents "to submit a complete *Habeas* Rule 5(c) list of transcribed hearings and hearing recordings not yet transcribed or translated, and an index disclosing the source of each transcription or recording and the present location in the record of this case." Order, *Ramos-Cruz*, No. 20-cv-1589 (D.P.R. Nov. 15, 2023), ECF No. 185 (all-caps omitted).[3]

Given that history, Mr. Crespo respectfully asks the Court to set a final deadline for Respondents to tender a corrected certified translation of Burgos-Torres testimony and the other submissions described in these objections. He further asks that those filings be accompanied by an unsworn declaration under penalty of perjury from a PRDOJ official with

[3] The *Ramos-Cruz* court took those measures in a case that had been pending less than three years. And there the respondents had to produce and translate the transcript of a ten-day jury trial, which by their own account ran 7,641 pages, as well as the transcripts of a post-conviction evidentiary hearing. *See Ramos-Cruz*, 677 F. Supp. 3d at 50 & n.1, 53. This petition has been pending for approximately ten years. Production of the testimony at issue was ordered in August 2020, ECF No. 82, and that testimony is roughly 250 pages from a single witness.

personal knowledge. The declaration would identify each copy of the testimony Respondents obtained, when and from which office Respondents obtained it, and the steps taken to locate the missing testimony, the same "source" and "location" information the *Ramos-Cruz* court required. *See* Order, *Ramos-Cruz*, No. 20-cv-1589 (D.P.R. Nov. 15, 2023), ECF No. 185.

If Respondents miss that date, or cause further delay, the Court has additional tools. In *Ramos-Cruz*, beyond the release noted above, the court set a show-cause hearing to which it summoned two senior PRDOJ officials, Order, *Ramos-Cruz*, No. 20-cv-1589 (D.P.R. Aug. 15, 2023), ECF No. 135, and warned that it "may strike the[] [respondents'] answer and enter default against them" if the translations were not filed by a date certain, Order, *id.* (D.P.R. Sept. 25, 2023), ECF No. 170. The First Circuit dismissed the PRDOJ's appeal from the release order. Judgment, *Ramos-Cruz v. Martínez-Adorno*, No. 23-1725 (1st Cir. Nov. 7, 2023). *See also Ruiz v. Cady*, 660 F.2d 337, 340 (7th Cir. 1981) (reversing a default judgment based on a five-day delay, but holding that default "should be preserved as a sanction against a respondent's unwarranted delay"); *Nation-Wide Check Corp. v. Forest Hills Distribs., Inc.*, 692 F.2d 214, 219 (1st Cir. 1982) (holding that an adverse inference from a party's failure to produce relevant evidence does not require a finding of bad faith).

Mr. Crespo does not ask the Court to impose any sanction now. He respectfully asks that the Court set a final deadline for compliance and make clear what will follow if that date is missed, or if further delay prevents completion of a record that Respondents had the obligation to lodge at the outset.

## IV. Conclusion

For these reasons, Petitioner Juan M. Crespo-Morales respectfully requests that the Court sustain these objections, decline to deem ECF No. 133 satisfied, and order

Respondents, by a date certain, to file the Spanish text translated at ECF No. 135, with a Commonwealth certification for each volume; state whether page 86 of the Tapes 11 to 15 volume, recordings of the testimony missing at pages 86 and 153, and pages 15 through 18 of the Tape 17 volume exist in any Commonwealth record, and, as to any that do not, furnish a narrative summary under Rule 5(c) or explain why they cannot; file a corrected certified translation that addresses the errors identified in these objections and includes each volume's cover page; and accompany those filings with an unsworn declaration under penalty of perjury from a PRDOJ official with personal knowledge describing when and from which office each copy of the testimony was obtained and the steps taken to locate the missing testimony. Mr. Crespo further requests the opportunity to review those filings and raise any objections before the Court sets the supplemental briefing schedule contemplated by ECF No. 133.

Dated: September 25, 2026.

Respectfully submitted,

Rachel Brill
Federal Public Defender

*/s/ Franco L. Pérez-Redondo*
Franco L. Pérez-Redondo
Assistant Federal Public Defender
Supervisor, Appellate Division

**Certificate of Service**

I certify that on September 25, 2026, I electronically filed this pleading with the Clerk of Court using the CM/ECF system that will send electronic notification to all parties of record.

*/s/ Franco L. Pérez-Redondo*
Franco L. Pérez-Redondo
Assistant Federal Public Defender
Supervisor, Appellate Division